Wahdlaw, J.,
dissenting.
The Ordinary should have taken a bond conditioned that the executor would account for the purchase money of the property bought by him. This bond would have been for the benefit of the persons entitled to have the account: without it the executor would have been liable to them, but it would have served to secure his accountability. The neglect to take the bond was an omission of duty for which the Ordinary was liable to the persons injured thereby; and upon his official bond his sureties are liable to the same extent as the Ordinary would have been for this omission. Now, who were injured by the Ordinary’s neglect, and to what extent? In considering this, we must lay out of view the payment made by the executor to the Ordinary— for in that transaction the Ordinary was not acting virtute officii. All reference to the bond for payment of money which the Ordinary took and gave up, must also be avoided: for if by giving up that bond the ordinary has committed a breach of official duty, it is not the breach which is assigned, but the omission to take any bond. By omitting to take a bond, no injury was done to the executor: of that he cannot complain—and if he have in his own wrong paid his money to the Ordinary, his action to recover back the money lies against the man who received it, not against the officer who had no right to demand or receive it. *39 The legatees and creditors may have been injured by the Ordinary’s omission—but not if the executor rightfully applied the purchase money to debts, or otherwise accounted for it; not in fact, if the executor be now solvent, and when called to account either prove that he is in no default concerning the money, or pay what may be decreed against him. It seems to me that the case is just as if the Ordinary had neglected to take an admin, istration bond. Could the distributees of the estate thereupon recover against him the amount of the Inventory, or other amount, without pursuit of the administrator? The Ordinary would by his neglect become himself surety of the administrator- and be liable to the same extent as a surety. The sureties to his bond should not be in a worse condition, or answerable beyond the same measure of liability. See Boggs v. Hamilton, 2 Mills, 388. Suppose in this case that the legatees collect the whole sum found from Patterson, or the executors of Joseph Baskin—shall they again have the money from the executor upon his accounting, or shall the benefit of these suits, in effect and contrary to the opinion of this Court, go to the executor by a credit given to him for the sum collected? Or shall these defendants be subrogated to the rights of the legatees, and recover over against the executor? The Ordinary himself could have no recourse to the executor, because he has the executor’s money;—but by the receipt of it, his sureties not being privies to his private acts, are in nowise bound. Suppose that upon accounting it be found that the whole estate is required for debts; shall the legatees still have the sum recovered from Patterson, or if the executor be solvent, shall recovery then be again had against the sureties at the suit of the creditors? How can it now be known that the legatees are entitled to any of this money? I am of opinion that the pleading is bad—but no objection has been taken to it, and one of the issues is, that the persons suing have not been damnified. Even without such issue, upon a bond for performance of covenants, damages can be assessed only according to the evidence given of injury sustained.
I concur, that upon the issue made in the case against the executors of Baskin, there could be no recovery against them. In the case against Patterson, I think the verdict should have been, *40 not for the whole purchase money for which the executor is accountable, but only for such damages as the Ordinary’s default may have occasioned to the persons who are suing in the name of the State.
FRost, J., concurred.